JOHN H. KOLB AND SONS, INC. *v.* G AND L
EXCAVATING, INC.
(AC 22316)

Lavery, C. J., and Schaller and Dupont, Js.

Argued February 20—officially released May 13, 2003

*William J. Ward*, for the appellant (defendant).

*Eugene A. Skowronski*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant, G and L Excavating, Inc., appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, John H. Kolb and Sons, Inc. On appeal, the defendant claims that the court improperly (1) denied its motion for a judgment of dismissal at the conclusion of the

plaintiff's case, (2) determined that the six year statute of limitations set forth in General Statutes § 52-576[1] was applicable as opposed to the three year statute of limitations set forth in General Statutes § 52-581,[2] (3) found that the statute of limitations was tolled, and (4) found that the plaintiff did not act with inexcusable delay in bringing the action and that the defendant was not prejudiced by that delay. We affirm the judgment of the trial court.

The court found the following facts. The parties had a long-standing business relationship based on an oral contract. The plaintiff obtained various types of insurance[3] on behalf of the defendant and paid the premiums. The payments, made by the plaintiff, were recorded in the defendant's account with the plaintiff. The defendant made periodic payments on the account. The court concluded that this arrangement was an open, running account.

The parties operated under that arrangement from 1986 until February, 1991. In February, 1991, despite the periodic payments made by the defendant, the balance of the account exceeded $62,000 (first account). In April, 1991, the plaintiff started a new account, with a zero balance, on behalf of the defendant (second account). After the second account was started, there were no charges made to the first account, although a

---

[1] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[2] General Statutes § 52-581 (a) provides: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."

[3] Specifically, the insurance coverage included business liability, automobile liability and workers' compensation. The plaintiff also obtained, on behalf of the defendant, bonds for municipal contracts.

balance remained. The defendant made regular payments on the second account, and the last entry on that account revealed a payment resulting in a zero balance.

The court found that the parties had entered into an agreement that all payments made after February, 1991, would first be applied to the balance of the second account and any excess payment would be then applied to the first account. A letter from the plaintiff's bookkeeper, dated September 26, 1991, informed the defendant that a recent payment of $20,000 resulted in the second account having a zero balance. The letter further stated that the overpayment of $8367 would be applied to the balance of the first account.

On March 26, 1993, the defendant made a payment of $4000. That payment resulted in the second account's balance being reduced to zero, and the overpayment of $825 was applied to the first account balance. The relationship between the parties ended at that point, and the plaintiff no longer obtained insurance on behalf of the defendant. The only remaining issue between the parties was the payment of the first account, which still carried a balance.

In February, 1994, an insurance company issued a dividend check to the defendant in the amount of $800. The check was sent to the plaintiff, who forwarded it to the defendant and requested that the defendant endorse the check over to the plaintiff. The defendant complied with the plaintiff's request, and the $800 was applied to the first account. The insurance company subsequently placed a stop payment on the check; nevertheless, the court found that this transaction demonstrated the intent of the defendant to acknowledge the debt.

The plaintiff initiated an action to recover the balance of the first account on February 9, 1999. The defendant filed an answer and several special defenses. The first

special defense alleged that the action was commenced more than three years after the oral contract allegedly was breached and, therefore, was barred by § 52-581. The second special defense averred that enforcement of the contract was prevented by the six year statute of limitations as set forth by § 52-576. In its sixth special defense, the defendant claimed that the plaintiff had initiated the action after "an inexcusable delay and [that] the defendant has been prejudiced by this delay."[4]

Following the trial, the court requested and received briefs from the parties regarding the issue of the applicable statute of limitations. The court held that the contract between the parties was executed because the plaintiff had completed all of its contractual obligations; therefore, § 52-576 and its six year statute of limitations applied.

The next issue the court addressed was whether the defendant had tolled the statute of limitations by acknowledging the debt. The court found that although the defendant never expressly directed payment to a particular account, the overpayments of the second account were intended to be applied to the first account As a result, the court stated that the six year statute of limitations was tolled by the overpayments that acknowledged the debt and that the six year statute started to run on March 26, 1993, the date of the overpayment of $825 that was applied to the first account. The plaintiff served the defendant with process on February 4, 1999, and, therefore, the court concluded that the action was timely.[5] In a footnote to its written memorandum of decision, the court rejected the defendant's spe-

---

[4] The defendant's other special defenses are not part of this appeal.

[5] It is axiomatic that "an action is brought on the date on which the writ is served on a defendant." (Internal quotation marks omitted.) *Raynor* v. *Hickock Realty Corp.*, 61 Conn. App. 234, 238, 763 A.2d 54 (2000); see also *Seaboard Burner Corp.* v. *DeLong*, 145 Conn. 300, 303, 141 A.2d 642 (1958).

cial defense of inexcusable delay.[6] The court rendered judgment in favor of the plaintiff, and this appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly denied its motion for a judgment of dismissal at the conclusion of the plaintiff's case. Specifically, the defendant argues that the court found, at the conclusion of the plaintiff's case, that the plaintiff's claim had been initiated outside of both the three year and six year statutes of limitation, and, therefore, denial of the motion was improper. We disagree.

As an initial matter, we set forth the applicable legal principles and standard of review. Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ."

Our Supreme Court has stated that "[a] prima facie case, in the sense in which that term is relevant to this case, is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove." (Citation omitted; internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). Moreover,

---

[6] The court stated that it "further finds that the defendant has failed to prove . . . inexcusable delay. The delay may have been a poor business decision, but since the suit was filed within the six years permitted by General Statutes § 52-576, the court will not bar it as untimely on any other grounds."

"[w]hether the plaintiff has established a prima facie case is a question of law, over which our review is plenary." *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 456, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002). "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Fontaine* v. *Colt's Mfg. Co.*, 74 Conn. App. 730, 732, 814 A.2d 433 (2003).

The defendant claims that at the time of its oral motion for dismissal, it argued that the plaintiff's action was untimely under both the three year and six year statutes of limitation, and that the court replied, "That's true." According to the defendant, it was, therefore, improper for the court to proceed any further and the motion should have been granted.

The defendant's argument fails to account for the statement that the court made immediately after the plaintiff requested a judgment of dismissal: "I'm not going to grant a directed verdict because I'm going to require briefs on this issue of the statute of limitations, and I want the law briefed as to those issues that might or might not toll the statute . . . ." The court had heard evidence, through the testimony of John Kolb, Jr., the president of the plaintiff, that a balance remained on the first account and that the parties had agreed, via the oral contract, that the plaintiff would apply any overpayments on the second account to the first account. From the evidence, the court could conclude that the payments on the account had tolled the six year statute of limitations, and therefore, the court properly denied the defendant's motion for dismissal.

Furthermore, the basis of the defendant's motion to dismiss was its special defense that the plaintiff's action was barred by the applicable statute of limitations. In

*Resnik* v. *Morganstern*, 100 Conn. 38, 122 A. 910 (1923), our Supreme Court held that a plaintiff is not required to meet a defendant's special defense at the time of a motion for nonsuit.[7] The *Resnik* court determined that the trial court improperly had granted a motion for nonsuiton the basis of rescission, a special defense. "The nonsuit was wrongly granted. *The plaintiff had proven the essential allegations of his complaint, and under such circumstances a nonsuit could not be granted.* If it were true that the evidence also established that the contract sued on had been rescinded, the court could not grant the nonsuit. Rescission is an affirmative defense and the plaintiff is not bound to meet it in establishing his case. If this were not so, a plaintiff would be compelled to assume the burden of proving not only his own case but meeting the special defenses of the defendant." (Emphasis added.) Id., 42; but see *Carnese* v. *Middleton*, 27 Conn. App. 530, 537–38, 608 A.2d 700 (1992) (special defense of collateral estoppel can be entertained on motion pursuant to predecessor of Practice Book § 15-8, although procedural irregularity). The defendant's argument that the court improperly denied the motion for dismissal, based on the special defense of the statute of limitations, is misplaced. A motion for dismissal is not generally granted when based on a special defense, such as the statute of limitations, and, in this case, the court properly denied the defendant's motion for dismissal.

II

The defendant next claims that the court improperly determined that the six year statute of limitations set forth in § 52-576 was applicable, rather than the three year statute of limitations set forth in § 52-581. Specifi-

---

[7] Our Supreme Court has stated that "a motion for a judgment of dismissal has replaced the former nonsuit for failure to make out a prima facie case." *Berchtold* v. *Maggi*, 191 Conn. 266, 271, 464 A.2d 1 (1983).

cally, the defendant argues that the contract between the parties was oral and, therefore, § 52-581 was the applicable statute of limitations. Additionally, the defendant argues that the court improperly ignored a previous order, issued by a different judge of the Superior Court, that found that an oral contract existed between the parties.[8] We disagree.

## A

The court concluded that the six year statute of limitations applied in the present case because the contract contained an open, running account and that the contract had been executed. Before we address the issue of the proper statute of limitations, we must first determine whether the court properly concluded that an open, running account existed between the parties and that the contract had been executed. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Lenares* v. *Miano*, 74 Conn. App. 324, 328, 811 A.2d 738 (2002); see also *Novak* v. *Omega Plastics Corp.*, 60 Conn. App. 424, 427, 760 A.2d 137, cert. denied, 255 Conn. 910, 763 A.2d 1035 (2000).

An open account is defined as "[a]n unpaid or unsettled account; an account with a balance which has not been ascertained, which is kept open in anticipation of future transactions." Black's Law Dictionary (6th Ed. 1990). In the present case, the plaintiff charged the defendant's first account after obtaining insurance. The defendant made periodic payments to the account, and that business relationship continued from 1986 until 1991. During that time, the defendant was never

[8] As we will discuss, the fact that a contract is oral is not dispositive as to the proper statute of limitations. The defendant's argument, therefore, is without merit.

required to pay the total amount of the account. The court, therefore, correctly concluded that an open, running account existed between the parties.

The defendant argues that the court failed to apply the general rule that payments to an open, running account are applied to the oldest debt first and that under that rule, no account existed between the parties. In the present case, the defendant's payments were applied first to the more recent second account rather than to the older first account. We disagree with the defendant's argument.

In *American Woolen Co.* v. *Maaget*, 86 Conn. 234, 85 A. 583 (1912), our Supreme Court stated: "In the absence of evidence of a contrary intention and of any other controlling circumstances, the law presumes that the entry of payments generally as credits upon an open, running merchant's account, indicates the intention of the creditor to apply the payments to the earliest items of the account. *The rule, although general, is, by no means, universal.* It is not an artificial or arbitrary principle, *but one founded merely on the presumed intention of the parties; and is applicable only where there is no evidence sufficient to show a contrary intention.*" (Emphasis added; internal quotation marks omitted.) Id., 247–48.

In the present case, the plaintiff's bookkeeper sent a letter to the defendant stating that all payments made after February, 1991, would be applied to the second account with any excess to be applied to the first account. Moreover, the overpayments made by the defendant in September, 1991, and March, 1993, were credited to the first account without objection by the defendant. Furthermore, the defendant endorsed the insurance company dividend check to the plaintiff, which applied the funds to the first account, an action that the court found demonstrated the defendant's

intent to acknowledge the debt. We conclude, therefore, that the court properly determined that an open, running account existed between the parties.

### B

We next consider whether the court applied the proper statute of limitations. The defendant argues that the contract between the parties was oral and therefore that the three year statute of limitations applied. We disagree.

As an initial matter, we set forth the applicable standard of review. "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); see also *Lenares* v. *Miano*, supra, 74 Conn. App. 328.

The Supreme Court has explained the difference between §§ 52-576 and 52-581. "If [General Statutes] §§ 6005 [now § 52-576] and 6010 [now § 52-581] are to be construed to make a harmonious body of law, *it is necessary to restrict the latter . . . to executory contracts*. Section [52-576] limits to six years actions on simple, that is parol, contracts; § [52-581] limits to three years actions on contracts not reduced to or evidenced by a writing, that is, contracts resting in parol; and unless the latter is intended to apply only to executory contracts there would be different limitations established for actions of the same type, that is, those on parol contracts, a result which the legislature could not have intended." (Citation omitted; emphasis added; internal quotation marks omitted.) *Tierney* v. *American Urban Corp.*, 170 Conn. 243, 248, 365 A.2d 1153 (1976); *Hitchcock* v. *Union & New Haven Trust Co.*, 134 Conn. 246, 259, 56 A.2d 655 (1947); *Novak* v. *Omega Plastics Corp.*, supra, 60 Conn. App. 428.

In *Cupina* v. *Bernklau*, 17 Conn. App. 159, 551 A.2d 37 (1988), we explained the distinction between §§ 52-576 and 52-581. "These two statutes, each establishing a different period of limitation, *can both be interpreted to apply to actions on oral contracts.* Our Supreme Court has distinguished the statutes, however, by construing § 52-581, the three year statute of limitations, as applying only to *executory* contracts." (Emphasis added.) Id., 163. A contract is *executory* when neither party has fully performed its contractual obligations and is *executed* when one party has fully performed its contractual obligations. Id.; see *Tierney* v. *American Urban Corp.*, supra, 170 Conn. 249 (oral contract was executed when plaintiff had done everything he had contracted to do); *Campbell* v. *Rockefeller*, 134 Conn. 585, 587–88, 59 A.2d 524 (1948); *Hitchcock* v. *Union & New Haven Trust Co.*, supra, 134 Conn. 259. It is well established, therefore, that the issue of whether a contract is oral is not dispositive of which statute applies. Thus, the defendant's argument that § 52-581 automatically applies to the oral contract between the parties is incorrect. The determinative question is whether the contract was executed.

In the present case, the plaintiff had performed all of its contractual obligations fully by obtaining the insurance on behalf of the defendant. All that remained was for the defendant to provide payment for the plaintiff's services. As a result, the contract was not executory in nature, and the six year statute of limitations in § 52-576 applied. Accordingly, the trial court properly determined that issue.

### III

The defendant next claims that the court improperly found that the statute of limitations was tolled. Specifically, the defendant argues that it was improper for the court to find that the statute of limitations was tolled

because (1) the parties did not have an agreement as to how the first account was to be paid, (2) the plaintiff's unilateral action was insufficient to toll the statute and (3) the defendant did not make an unequivocal acknowledgment of the debt. We disagree.

In *Cadle Co.* v. *Errato*, supra, 71 Conn. App. 461, this court stated: "The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . . As with other questions of fact, unless the determination by the trial court is clearly erroneous, it must stand. . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the Statute of Limitations. . . . [A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion." (Citations omitted; internal quotation marks omitted.) Id., 461–62.

In the present case, the court heard evidence that the plaintiff had sent the defendant a letter indicating that any excess payment to the second account would be applied to the first account. In September, 1991, the plaintiff applied $8367 to the first account. In March, 1993, the plaintiff applied $825 to the first account's balance. Finally, in February, 1994, the defendant signed an insurance check over to the plaintiff. The court found that all of those transactions indicated the intent of the defendant to acknowledge and to pay the first account's balance. We cannot say that this finding was clearly erroneous. We conclude, therefore, that the court properly found that the defendant had acknowledged the entire debt and that the statute of limitations was tolled.[9]

## IV

The defendant's final claim is that the court improperly refused to find that the plaintiff had acted with an inexcusable delay in filing its action and that the defendant was prejudiced by that delay.[10] Specifically, the defendant argues that as a result of the plaintiff's delay, all of the defendant's records regarding the dispute were lost and that the defendant was unable to recall the circumstances of the dispute. We are not persuaded.

We first set forth the applicable standard of review. "The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant.

[9] Although the trial court used the March, 1993 date to determine whether the February, 1999 filing was timely, it noted later in its memorandum of decision that the plaintiff had until six years after the February, 1994 payment to file the action.

[10] The defendant's special defense does not actually use the term "laches." The defendant alleged that the "plaintiff's Revised Complaint has been brought after an inexcusable delay and the defendant has been prejudiced by this delay." We therefore interpret that special defense, as alleged by the defendant, to mean laches.

First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Tinaco Plaza, LLC* v. *Freebob's, Inc.*, 74 Conn. App. 760, 776, 814 A.2d 403, cert. granted on other grounds, 263 Conn. 904, 819 A.2d 840 (2003).

Our Supreme Court has stated that "[t]he defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit. . . . Delay alone is not sufficient to bar a right . . . ." (Citations omitted; internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 88, 527 A.2d 230 (1987).

In *Giordano* v. *Giordano*, 39 Conn. App. 183, 664 A.2d 1136 (1995), this court stated: "The defendant misunderstands the nature of a laches defense. A laches defense is not, as he asserts, a substantive right that can be asserted in both legal and equitable proceedings. *Laches is purely an equitable doctrine*, is largely governed by the circumstances, and *is not to be imputed to one who has brought an action at law within the statutory period.* . . . It is an equitable defense allowed at the discretion of the trial court *in cases brought in equity.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 214.

In the present case, it is clear that the defense of laches was not available to the defendant. The plaintiff's action, an action at law, was filed within the applicable statute of limitations. We conclude, therefore, that the court properly refused to find that the defense of laches was applicable.

The judgment is affirmed.

In this opinion the other judges concurred.