# ANTHEM HEALTH PLANS, INC. *v.* ACTION MOTORS CORPORATION
## (AC 24065)

Lavery, C. J., and McLachlan and Peters, Js.

Argued April 29—officially released July 6, 2004

*Edward P. Jurkiewicz*, for the appellant (plaintiff).

*John P. Thygerson*, with whom, on the brief, was *Marc J. Grenier*, for the appellee (defendant).

*Opinion*

PETERS, J. In this action to recover an unpaid insurance premium, the principal stated issue is the applicability of General Statutes § 52-581 (a), which requires that actions for breach of oral contracts be brought within three years of their accrual. Underlying this disputed issue of law is a more significant disputed issue of fact. This issue is whether the parties ever agreed, in any fashion, on the terms of an insurance policy that would have required payment of the disputed insurance premium. The trial court rendered judgment in favor of the alleged policyholder on the basis of findings made by a designated fact finder. We affirm the judgment.

The plaintiff, Anthem Health Plans, Inc., doing business as Anthem Blue Cross & Blue Shield of Connecticut, Inc., filed a three count complaint against the defendant, Action Motors Corporation. On appeal, it pursues only the first count, in which it alleged that the defendant, in breach of an express health insurance contract, failed to pay a December, 1997 insurance premium allegedly owed to the plaintiff under the terms of a health insurance policy described by its policy number.[1] The defendant denied liability and filed two

---

[1] In the trial court, the plaintiff also alleged that the defendant was liable because of its breach of an implied contract for reimbursement of benefits paid to the defendant's employees. For this reason, the plaintiff also claimed a right to restitution because the defendant had been unjustly enriched. There was no evidence about the nature of the employees' health insurance benefits that the plaintiff paid. The fact finder found that the defendant had no duty to reimburse the plaintiff for these payments because, until the hearing in this case, the defendant was unaware of these payments. The plaintiff has not pursued these claims in its appeal to this court.

special defenses, one alleging termination of a prior insurance policy and the other alleging a statutory time bar to the pursuit of the plaintiff's claims. The trial court, affirming the findings of the fact finder,[2] rendered judgment in favor of the alleged insured.

The record before us consists of the facts found by the fact finder, as well as exhibits and a transcript of the proceedings before her. Almost all of the facts are undisputed.

On September 1, 1995, the parties entered into a contract for health insurance for the defendant's employees. This policy, described as Master Group Policy No. 085335-000, which included a rider to provide prescription drug coverage (1995 policy), was set to expire on August 31, 1997.

During August, September and October, 1997, the parties tried, unsuccessfully, to find an acceptable solution to their dispute about the increased premiums that the plaintiff intended to charge for renewal of the insurance policy. Accordingly, the defendant notified the plaintiff that it would pay for health insurance on a month-to-month basis until an agreement could be reached. Premiums higher than those previously required were paid through October 31, 1997. Beginning November 1, 1997, the defendant obtained coverage from a different insurer.

On August 22, 1997, while these negotiations were ongoing, the defendant sent the plaintiff a letter (August letter) indicating that the defendant "would like to renew" its insurance coverage, but on terms that differed from those contained in the 1995 policy. The August letter proposed deletion of a prescription drug

---

[2] The record contains a transcript of the proceedings before the fact finder. There is no evidence of an oral argument or additional briefing in the trial court.

rider and itemized the premiums that the defendant was prepared to pay for this reduced coverage.[3]

The plaintiff did not respond directly to the August letter. Instead, it sent to the defendant a copy of the 1995 policy, Master Group Policy No. 085335-000, updated with a "release date of September 23, 1997" (1997 policy). It was the plaintiff's practice to mail such a policy to the policyholder at the time of the issuance of the policy of the group health insurance. Although the 1997 policy included several pages calling for the signature of the policyholder, the defendant never signed the policy.[4] In disregard of the renewal terms stated in the August letter, section SRX in the 1997 policy continued to include coverage for prescription drugs. Furthermore, the 1997 policy did not incorporate the reduced premium rates proposed in the August letter.

Despite the absence of further written documentation of agreement about the terms of the 1997 policy, the plaintiff sent the defendant a bill for $18,405.52 as the premium for coverage for December, 1997.[5] At that time, the defendant had no reason to know that such a premium payment was expected.

Although any payment for insurance coverage, if due, should have been made no later than December 31, 1997, the plaintiff did not initiate the present proceedings until February 2, 2001, more than three years after the accrual of its alleged cause of action. This belated filing triggered the defendant's special defense that the plaintiff's action was barred by § 52-581 (a).

---

[3] The letter stated the following: "[The defendant] would like to renew and stay with the current [1995] policy with NO drug rider at these renewal rates: Single $260.90   2 person: $560.87   Family: 704.46 . . . ."

[4] The defendant's witnesses testified that the defendant did not receive the policy.

[5] Interestingly, the plaintiff never billed the defendant for the November, 1997 coverage.

At trial, the plaintiff disputed only three findings made by the fact finder. In her original finding of facts, the fact finder found that "[t]here is no writing signed by the defendant evidencing the agreement between the plaintiff and the defendant with respect to the provision of group insurance." In her supplemental finding she found that "[t]he Master Group Policy . . . and the letter dated August 22, 1997 . . . taken together do not evidence an agreement reduced to writing or a note or memorandum as referenced in General Statutes § 52-581." She also found that the reduced renewal rates proposed by the defendant "do not appear on the unsigned Master Group Policy (Exhibit 2) or otherwise in evidence." These findings furnished the underpinnings for the fact finder's recommendation that the court's judgment be in favor of the defendant.

In its appeal to this court, the plaintiff again challenges the fact findings to which it objected at trial. It also raises an issue of law about the applicability of § 52-581 (a) under the circumstances of this case. See *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 609–10, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). In light of the findings made at trial, the trial court did not reach this issue of statutory interpretation. Because we are not persuaded by the plaintiff's disagreement with the facts found, we likewise need not, and do not, address the plaintiff's claim of law.

To prevail in its challenge to the findings of fact approved by the trial court, the plaintiff must establish that these findings were clearly erroneous. Practice Book § 60-5; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Like the trial court, we are persuaded that, on the record before it, the fact finder reasonably could make the findings that she did. It is true that, in some respects, the record is ambiguous. Such ambiguities, however,

are of no avail to the plaintiff, because the plaintiff bore the burden of proving its claim for relief.

The plaintiff argues that the fact finder erroneously found a lack of evidence that the parties had agreed in writing on the terms for renewal of the 1995 policy. The plaintiff's principal claim is that it met its burden of proof by presenting evidence of the defendant's interest in renewal of insurance coverage, as manifested by the defendant's August letter, and of its own agreement to provide coverage, as manifested by its mailing of the 1997 policy to the defendant in a timely fashion.

We agree with the plaintiff's interpretation of § 52-581 (a) as permitting the statutory requirement of a contract in writing to be satisfied by the juxtaposition of two documents, each denoting the agreement of one of the parties. We do not agree, however, that the juxtaposition of two inconsistent documents will suffice.

Insurance contracts differ in significant respects from other contracts; see *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 453, 664 A.2d 279 (1995); but they share the requirement that the contracting parties agree about the essential terms of their commitment to each other. Cf. *Willow Funding Co., L.P.* v. *Grencom Associates*, 63 Conn. App. 832, 844–45, 779 A.2d 174 (2001). It is difficult to think of terms more essential to an enforceable insurance contract than identification of the risks that the policy will cover and specification of the premiums that the policyholder will pay for this coverage. On these very terms, the two documents on which the plaintiff relies are inconsistent.

Contrary to the plaintiff's contention, the defendant's August letter cannot reasonably be read as an unconditional agreement to renew the 1995 insurance policy. At most, it was an offer for renewal at reduced premiums reflecting reduced coverage, that is to say, by elimination of the drug prescription rider. The plaintiff has

not argued that either of these proposed changes is reflected in the 1997 policy that the plaintiff sent to the defendant in September, 1997. Issuance of the 1997 policy did not, therefore, manifest the plaintiff's acceptance of the defendant's proposed renewal terms.

To counter the significance of the self-evident inconsistency between the letter and the 1997 policy, the plaintiff makes two arguments, neither of which it advanced at trial. First, it maintains that the fact finder erroneously failed to recognize that two invoices sent by the plaintiff to the defendant subsequent to the mailing of the 1997 policy obviate any ambiguity about the premiums to be charged to the plaintiff because they manifest the plaintiff's acquiescence in the premium structure proposed by the defendant. Second, it maintains that the inconsistency between the letter and the policy is irrelevant because, read as a whole, the record establishes the existence of an agreement regardless of its specific terms. We are not persuaded.

First, the plaintiff maintains that whatever inconsistency might once have existed between the letter and the 1997 policy was resolved by two invoices that it sent to the defendant in October and November, 1997. These invoices, in its view, document the plaintiff's acquiescence in the reduced rates proposed by the defendant and demonstrate that the fact finder's finding to the contrary was clearly erroneous. Although the invoices were exhibits at trial, the fact finder did not make, and was not asked to make, any findings about their significance to the plaintiff's claim for relief.

On this state of the record, we might decline to address the plaintiff's claim. In point of fact, however, the invoices themselves do not manifest the plaintiff's agreement to any particular set of premiums because they do not state the premium calculations on which they are based. Furthermore, the defendant did not

accept the invoices as reflecting an agreement about premium rates for a renewal policy. Although the defendant's owner testified that "the October statement . . . has some of the corrections . . . that we requested and the charges were reduced," he also testified that the reduction "was a pittance" and was not satisfactory. The invoices therefore do not cast doubt on the accuracy of the fact finder's finding that the renewal rates stated in the August letter "do not appear on the unsigned Master Group Policy . . . or otherwise in evidence."

Second, the plaintiff maintains that, even if the terms of the parties' agreement were not definitively established at trial, the record itself manifests the parties' agreement to acceptance of the 1997 policy. It argues that the record dispositively establishes the existence of this agreement because of (1) an admission in the defendant's pleading, (2) a finding by the fact finder and (3) the inference to be drawn from the fact finder's findings about the timeliness of the plaintiff's complaint. We disagree.

It is true that the defendant admitted the existence of an agreement for an insurance policy denominated Group Policy Number 085335-000 and that the fact finder found that the parties had "agreed that the plaintiff would provide group insurance coverage" for the defendant's employees. It is equally true, however, that this case involves two insurance policies that bear the same number, the original policy issued in 1995, and the renewal policy issued in 1997.

The plaintiff asks us to assume that the defendant's admission and the fact finder's finding relate to the 1997 policy. The record does not require us to make this assumption. The defendant's pleading, read in its entirety, makes it more likely that the defendant's

admission referred to the 1995 policy because the pleading also alleged that the defendant "terminated its agreement with the plaintiff in regards to providing insurance benefits to the defendant." We think it more reasonable to interpret this pleading as referring back to the preexisting 1995 policy rather than as looking forward to the disputed 1997 policy. It is also clear that the fact finder's finding references the 1995 policy, and not the 1997 policy, because it follows a finding that the defendant had filed an application for insurance in 1995. At best, the pleading and the finding might be characterized as ambiguous, but it was the plaintiff's burden to ask the fact finder to resolve any such ambiguities at trial.

The plaintiff further contends that, because the fact finder made findings relevant to the applicability of the statute of limitations, she necessarily must have found the existence of a predicate agreement between the parties. It is undeniable that § 52-581 (a) assumes the existence of an underlying contractual commitment and addresses only the requirement of a written memorial thereof. The fact finder might well have separated her findings of the absence of an agreement from her findings about the absence of a written record of any agreement and about the plaintiff's delay in filing suit. Nonetheless, the record demonstrates, as the fact finder found, that the plaintiff proved neither agreement nor documentation. Under these circumstances, it would elevate form over substance to sustain the plaintiff's appeal because of the manner in which the fact finder stated her findings.

The judgment is affirmed.

In this opinion the other judges concurred.