******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DEUTSCHE BANK NATIONAL TRUST COMPANY,
TRUSTEE *v.* HEATHER M. BLISS ET AL.
(AC 36219)

Gruendel, Keller and Borden, Js.

*Argued February 17—officially released September 1, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Povodator, J.)

*John R. Hall*, for the appellant (named defendant).

*Laura Pascale Zaino*, with whom, on the brief, was
*Brian D. Rich*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The plaintiff, Deutsche Bank National Trust Company, as trustee for Long Beach Mortgage Loan Trust 2006-5 (Long Beach Mortgage Loan Trust), brought this residential real estate foreclosure action against several defendants, including the named defendant, Heather M. Bliss.[1] The defendant appeals from the judgment of the trial court ordering a foreclosure by sale of the subject property. She claims that: (1) the plaintiff lacked standing to bring the present action; (2) the plaintiff failed to prove its prima facie case; and (3) the court improperly concluded that the mortgage was enforceable. We affirm the judgment of the trial court.

Following an evidentiary hearing, the court issued a written decision that set forth the following findings of fact:

"1. On or about April 27, 2006, [the] defendant . . . executed and delivered to Long Beach Mortgage Company (the initial lender) a promissory note in the amount of $1,300,000.00.

"2. To secure the note, [the] defendant also executed a Mortgage, including a Fixed/Adjustable Rate Rider, on a parcel of land, together with the improvements thereon, known as 6 Sylvan Road, Westport, Connecticut.

"3. At the time that the note and mortgage were executed (on or about April 27, 2006), Long Beach Mortgage Company was a subsidiary of Washington Mutual Bank, which at the time of the loan was subject to federal banking regulations.

"4. The Mortgage subsequently was assigned to [the] plaintiff by virtue of an Assignment of Mortgage dated October 20, 2009, and recorded on November 10, 2009 . . . in the Westport land records.

"5. In addition to being the recorded assignee of the mortgage, [the] plaintiff is the holder of the underlying note.

"6. Since approximately January 1, 2009, [the] defendant has been in default of her payment obligations under the note.

"7. Despite demand, [the] defendant has failed to bring her obligations current.

"8. The value of the subject property, as of June 26, 2013, was $1,400,000.

"9. [The] defendant's indebtedness to [the] plaintiff, as of June 26, 2013, was $1,850,089,92.

"10. [The] plaintiff's reasonable attorney's fees, through the time of trial, totaled $25,000.00."

The court went on to make the following determinations:

"1. [The] defendant's default of her obligations under the note is an adequate basis for [the] plaintiff's efforts to foreclose the mortgage.

"2. [The] defendant has not proven her special defense that the note is unenforceable.

"3. Although there does not appear to be any equity in the property, the presence of the United States of America as a defendant requires any foreclosure to be a foreclosure by sale." (Footnote omitted.)

In its decision, the court rejected the defendant's argument that the mortgage at issue was unenforceable because the initial lender, Long Beach Mortgage Company, had surrendered its Connecticut license as a mortgage lender before it processed her mortgage loan application. The court ordered a judgment of foreclosure by sale with a sale date of December 14, 2013. This appeal followed.

I

For the first time on appeal, the defendant claims that the plaintiff lacked standing to bring the present action because, despite the fact that the plaintiff alleged in its complaint that it was the holder of the note, the plaintiff failed to demonstrate that it had this status at the time it commenced the present action. The plaintiff argues that it had the status of a holder and, thus, had standing to bring the present action, by virtue of its possession of the note and a blank endorsement. Consistent with the fact that the defendant did not raise the issue of standing before the trial court, the court did not address the issue of standing or make any factual findings concerning the issue of standing in its opinion. Nonetheless, on the basis of our assessment of the evidence presented by the plaintiff, we conclude that the defendant's claim is not persuasive.[2]

"The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time. . . . [T]he plaintiff ultimately bears the burden of establishing standing." (Citations omitted; internal quotation marks omitted.) *Wells Fargo Bank, N.A.* v. *Strong,* 149 Conn.

App. 384, 397–98, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014).

"Generally, in order to have standing to bring a foreclosure action the plaintiff must, *at the time the action is commenced*, be entitled to enforce the promissory note that is secured by the property. . . . Whether a party is entitled to enforce a promissory note is determined by the provisions of the Uniform Commercial Code, as codified in General Statutes § 42a-1-101 et seq. . . . 'Under [the Uniform Commercial Code], only a "holder" of an instrument or someone who has the rights of a holder is entitled to enforce the instrument.' . . . When a note is endorsed in blank, any person in possession of the note is a holder and is entitled to enforce the instrument. General Statutes §§ 42a-1-201 (b) (21) (A), 42a-3-205 (b) and 42a-3-301. If an endorsement makes a note payable to an identifiable person, it is a 'special endorsement,' and only the identified person in possession of the instrument is entitled to enforce the instrument. General Statutes §§ 42a-1-201 (b) (21) (A), 42a-3-205 (a) and 42a-3-301." (Citations omitted; emphasis added.) *U.S. Bank* v. *Ugrin*, 150 Conn. App. 393, 401–402, 91 A.3d 924 (2014).

"The plaintiff's possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action. . . . After the plaintiff has presented this prima facie evidence, the burden is on the defendant to impeach the validity of [the] evidence that [the plaintiff] possessed the note at the time that it commenced the . . . action or to rebut the presumption that [the plaintiff] owns the underlying debt . . . . The defendant [must] set up and prove the facts which limit or change the plaintiff's rights." (Citation omitted; internal quotation marks omitted.) Id., 402. "The possession by the bearer of a note [e]ndorsed in blank imports prima facie [evidence] that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Citations omitted.) *Garris* v. *Calechman*, 118 Conn. 112, 115, 170 A. 789 (1934).

Turning to the facts of the present case, we observe that the plaintiff, as trustee for the Long Beach Mortgage Loan Trust, alleged in relevant part that, on April 27, 2006, the defendant executed and delivered to Long Beach Mortgage Company a note for a loan in the original principal amount of $1,300,000. The plaintiff alleged: "On said date to secure said Note the [defendant] . . . did execute and deliver to Long Beach Mortgage Company . . . a Mortgage on the [subject property]. Said Mortgage was dated . . . and recorded . . . in . . .

the Westport Land Records. Said Mortgage was assigned to [the plaintiff] . . . by virtue of an Assignment of Mortgage to be recorded on the Westport Land Records. The plaintiff . . . is the holder of said Note and Mortgage."[3] In her amended answer, the defendant denied that the plaintiff was the holder of the note and mortgage at issue.

At the evidentiary hearing in the present case, the plaintiff presented testimony from Wilkin Rodriguez, a home lending research officer employed by JP Morgan Chase Bank N.A. (JP Morgan), the servicer for the Long Beach Mortgage Loan Trust, of which the plaintiff is the trustee. Rodriguez testified that JP Morgan, as the servicer for the Long Beach Mortgage Loan Trust, documented and kept records for the trust, and also serviced its loans.

Rodriguez testified that JP Morgan maintained an electronic database containing loan records, and that original collateral files associated with a loan, which contain copies of the original mortgage, original note and title policy, are stored in Monroe, Louisiana. Rodriguez testified, as well, that JP Morgan's online records are updated on a daily basis, at or near the time of the events to which they are related, and that he reviews such records almost daily. He testified that the electronic records included image copies of documents on file.

Through Rodriguez, the plaintiff introduced into evidence a four page document that consistently was referred to at trial as "the note." The first three pages consisted of a redacted copy of the original promissory note that was executed by the defendant in favor of Long Beach Mortgage Company on April 27, 2006. Rodriguez testified that "the fourth page of [the] document" was a copy of "an endorsement in blank signed by Long Beach Mortgage Company." The undated endorsement by Long Beach Mortgage Company bears the signatures of "Jess Almanza, Vice President" and "Kimberly Smith, Assistant Vice President." Rodriguez testified that he had reviewed the four page document, which included the endorsement, in JP Morgan's electronic records in preparation for his trial testimony. He testified, as well, that the original note, a part of JP Morgan's collateral file, came into his possession a day earlier from the counsel who had brought the foreclosure action. Before the court admitted into evidence the document consisting of the note with the attached endorsement, Rodriguez testified that he had compared the document to the original imaged copy of it that was maintained in JP Morgan's electronic records. Rodriguez verified that the document was "[the] [s]ame thing" and that "[t]he bank owns this note."

The defendant also presented a document that Rodriguez identified as "the doc-line report." According to Rodriguez, this document, generated and maintained in

the normal course of business by JP Morgan, "keeps track of the collateral file as it comes in and gets released as needed." As stated previously in this opinion, Rodriguez described the "collateral file" as consisting of "[c]opies of the original mortgage, the original note, [and the] title policy." Consistent with the information set forth in the report that had been generated and maintained in connection with the defendant's loan, Rodriguez testified that JP Morgan, as servicer for the Long Beach Mortgage Loan Trust, possessed the note and the attached endorsement that the plaintiff presented in evidence, as well as the mortgage and title insurance policy at issue, as of July 18, 2009, and that these materials had been "imaged into [JP Morgan's electronic] system accordingly."[4] He testified, as well, that the loan was in default status and that the defendant had been notified of this fact. Rodriguez testified that the amount currently due on the loan was $1,850,089.92.

The defendant does not dispute that the plaintiff possessed the note at the time the action was commenced. The defendant argues, instead, that the plaintiff failed to demonstrate that it possessed the blank endorsement at the time that it commenced the present action by service on August 25, 2009. In so arguing, the defendant relies heavily on the following colloquy that occurred during the defendant's cross-examination of Rodriguez:

"Q. I show you [the note] . . . marked as a full exhibit. Inviting your attention to [the endorsement] . . . please. Would you agree that that is a page that was stapled on to the original document at some point?

"A. The page with the endorsement was added on after the fact.

"Q. And you don't know when it was added on, do you?

"A. No.

"Q. You don't know any of the individuals identified on the stamp of the endorsement, do you?

"A. No.

"Q. The endorsement is in blank?

"A. That's correct.

"Q. The endorsement purports to be by Long Beach Mortgage Company. Do you have any documents indicating what position these people held with Long Beach Mortgage other than what we see here?

"A. No."

Later during Rodriguez' cross-examination, the defendant's attorney revisited the issue of when the endorsement was attached to the note. The following colloquy occurred:

"Q. And again, at the risk of repetition, you don't know when the page was stapled on, the endorsement

papers stapled onto [the note marked as a] full exhibit? . . .

"A. No. I do not know what date that was added. . . .

"Q. You don't know when that endorsement occurred, do you?

"A. I do not know the date of the endorsement."

As an initial matter, we observe that this line of inquiry was not related to an attempt by the defendant at trial to demonstrate that the plaintiff lacked standing because the endorsement had not been made prior to the time that the plaintiff commenced this action. As stated previously in our discussion of this claim, the defendant did not raise such a claim at trial. Turning to Rodriguez' testimony, we note that although it reflects that Rodriguez did not know *in specific terms* when the undated endorsement had been made or added to the note, it does not contradict the evidence, including Rodriguez' earlier testimony, that demonstrated that JP Morgan, as servicer of the loan for the Long Beach Mortgage Loan Trust, had the note with the endorsement in its possession on July 18, 2009. Although Rodriguez testified that the endorsement had been added on "after the fact," it is reasonable to interpret this testimony to reflect Rodriguez' belief that the endorsement had been attached to the original note, in JP Morgan's possession on July 18, 2009, at some point after the note had been executed in April, 2006. There is no reasonable basis on which to interpret this testimony such that the endorsement had occurred or that it had been added to the note after the commencement of the present action. In this regard, we observe that, as relevant, the electronic records of JP Morgan—on which Rodriguez based his testimony—merely reflected the date on which JP Morgan, as servicer, came to possess the note. Nothing in those records, which pertained to the note, the blank endorsement, and all of the documentary evidence in JP Morgan's possession, suggests that JP Morgan did not come into possession of the note and the endorsement at different times, let alone at any time after the commencement of the present action. Additionally, the fact that Rodriguez was unfamiliar with the persons who signed the endorsement does not bear on the issue of when the endorsement occurred or when JP Morgan came to possess the endorsement.

Accordingly, we conclude that, by means of Rodriguez' testimony and the doc-line report generated and maintained by JP Morgan, and the reasonable inferences necessarily drawn therefrom, the plaintiff demonstrated that the copies of the note and blank endorsement that it presented in evidence reflected the original documents that were in JP Morgan's possession as of July 18, 2009, which had been imaged into its system in the normal course of business. Further, the

plaintiff demonstrated that its servicer, JP Morgan, was in possession of the note endorsed in blank when it commenced the action. The defendant failed to set up and prove facts which limited or changed the plaintiff's rights, as holder of the note, to commence the present action on August 25, 2009.

## II

Next, the defendant claims that the plaintiff failed to prove its prima facie case. Specifically, the defendant claims that the plaintiff failed to present (1) "evidence that it had received both the note and the endorsements thereto prior to the commencement of the lawsuit" and (2) "evidence of authority or scope of authority under the power of attorney used to assign the mortgage to the plaintiff." We disagree.

A plaintiff establishes its prima facie case in a mortgage foreclosure action by demonstrating by a preponderance of the evidence that it is the owner of the note, that the defendant mortgagor has defaulted on the note, and that conditions precedent to foreclosure have been satisfied.[5] "Our legislature, by adopting [General Statutes] § 49-17,[6] created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." (Footnote added.) *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 230, 32 A.3d 307 (2011), overruled in part by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013). "Section 49-17 codifies the well established common-law principle that the mortgage follows the note . . . ." Id. "Being the holder of a note satisfies the plaintiff's burden of demonstrating that it is the owner of the note because under our law, the note holder is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under § 49-17. The possession by the bearer of a note [e]ndorsed in blank imports prima facie [evidence] that he acquired the note in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity. The production of the note [endorsed in blank] establishes [the posessor's] case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) *American Home Mortgage Servicing, Inc.* v. *Reilly*, 157 Conn. App. 127, 133,    A.3d    (2015).

"In order to establish a prima facie case, the proponent must submit evidence which, *if credited*, is sufficient to establish the fact or facts which it is adduced to prove." (Emphasis in original; internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 608, 717 A.2d 713 (1998). "[W]hether the plaintiff has established a prima facie case is a question of law, over which our review is

plenary." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 605, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003).

On the basis of our resolution of the claim discussed in part I of this opinion, we reject the defendant's claim that the plaintiff did not demonstrate that it was the owner of the note because it failed to present evidence that it had received the note and blank endorsement prior to August 25, 2009, the time at which it commenced the present action.

As we observed in footnote 3 of this opinion, there was undisputed evidence that the mortgage at issue in this case was assigned to the plaintiff on October 20, 2009. The defendant also claims that the plaintiff failed to present "evidence of authority or scope of authority under the power of attorney used to assign the mortgage to the plaintiff." This aspect of the defendant's claim is unpersuasive because, in light of the authority previously set forth in this section of our opinion, even were we to agree with the defendant that the assignment of the mortgage to the plaintiff was invalid, it would not affect the plaintiff's ability to demonstrate that it is the owner of the note and, thus, prove its prima facie case.

For the foregoing reasons, we reject the defendant's assertion that the plaintiff failed to present evidence to support its prima facie case.

III

Finally, the defendant claims that the court improperly concluded that the mortgage was enforceable. We disagree.

At trial, the defendant alleged as a special defense and attempted to demonstrate that the note and mortgage were unenforceable because prior to engaging in the mortgage loan transaction with the defendant, and before the note and mortgage were executed on April 27, 2006, the initial lender, Long Beach Mortgage Company, had surrendered its Connecticut license as a mortgage lender. Also, the defendant alleged that "[w]hen Long Beach Mortgage Company engaged in the business of making [a] mortgage . . . loan to [her] . . . without a license, that conduct was a violation of public policy and, consequently, the debt and note along with the mortgage being foreclosed in this action that putatively secures the debt and note are all unenforceable." The plaintiff, in reply, argued that the loan was enforceable because, at times relevant, Long Beach Mortgage Company was a subsidiary of a bank operating under federal banking laws and, because federal banking regulations preempt state licensing laws, it was of no consequence to the present case that Long Beach Mortgage Company was not licensed under state law.

In its memorandum of decision, the court stated as

an initial matter that it was not in dispute that, at the time of the origination of the loan, Long Beach Mortgage Company "was not licensed to make loans under Connecticut banking statutes and indeed had surrendered its license to do so a few months earlier." The court stated that the issue raised by the defendant could be narrowed "to the determination of whether federal banking regulations preempt state banking laws and especially those relating to licenses for organizations in the mortgage loan business."

In rejecting the defense, the court relied on the preemption analysis set forth in a decision of the United States Court of Appeals for the Second Circuit, *Wachovia Bank, N.A.* v. *Burke*, 414 F.3d 305 (2d Cir. 2005), cert. denied, 550 U.S. 913, 127 S. Ct. 2093, 167 L. Ed. 2d 830 (2007) (*Wachovia*). The court in *Wachovia* concluded that regulations promulgated under the National Bank Act, 12 U.S.C. § 38 et seq., by the federal Office of the Comptroller of the Currency preempted state banking laws intended to apply to operating subsidiaries of nationally chartered banks, including the plaintiff in that case. Id., 309. Thus, the Court of Appeals upheld the determination of the United States District Court for the District of Connecticut that federal law preempted state regulation of operating subsidiaries of nationally chartered banks. Id., 321.[7] With regard to the issue of federal preemption of state banking laws, the court in the present case also relied on *State Farm Bank, FSB* v. *Burke*, 445 F. Supp. 2d 207 (D. Conn. 2006), in which the United States District Court for the District of Connecticut, consistent with the analysis in *Wachovia*, concluded that federal regulations promulgated under the Home Owners' Loan Act, 12 U.S.C. § 1461 et seq., by the federal Office of Thrift Supervision preempted Connecticut banking laws intended to govern lending and deposit-related activities of a federal savings association and its agents. Id., 221.

The court in the present case observed that the defendant failed to demonstrate that the analysis in *Wachovia* did not support its resolution of the preemption issue in the present case, which involved an operating subsidiary of a federally chartered bank that was subject to regulations promulgated by the Office of Thrift Supervision pursuant to the Home Owners' Loan Act. The court observed that the defendant was unable to refer the court to any contrary authority. Furthermore, the court noted that because *Wachovia* was a decision of the Court of Appeals for the Second Circuit, it was entitled to "special consideration" by Connecticut courts. As the court explained, "[w]hether couched in terms of comity or something stronger, the court has not been presented with an acceptable—much less convincing—reason not to follow *Wachovia* (and *State Farm [Bank, FSB]*)."

Having concluded that the defendant had failed to

undermine the precedential value of *Wachovia*, the court also rejected what it deemed to be a purely equitable argument advanced by the defendant, namely, "that issuance of the loan by an unlicensed lender violated public policy and on that basis the mortgage and note should not be enforced." The court stated that because the loan was legally valid as a matter of law, it declined the defendant's invitation "to elevate equity above the law. . . . Equity cannot be invoked to circumvent preemption."

"When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *D'Urso* v. *Lyons*, 97 Conn. App. 253, 255–56, 903 A.2d 697, cert. denied, 280 Conn. 928, 909 A.2d 523 (2006). Here, the defendant does not challenge the court's finding that, at the time of the origination of the loan and mortgage at issue, Long Beach Mortgage Company was a subsidiary of Washington Mutual Bank, a federally chartered bank that was subject to applicable federal regulations. Nor does the defendant persuade us that, with regard to the issue of federal preemption, the court improperly relied on and applied preemption law, as set forth in *Wachovia*, in the present case.

In an attempt to undermine the propriety of the court's decision, the defendant, for the first time on appeal, argues that *Wachovia* "has been legislatively overruled" when, in 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. No. 111-201, 124 Stat. 1376 (2010). Although this argument contradicts the defendant's view of the law at trial, at which time she suggested that changes to the law arising from the Dodd-Frank Act were not relevant to a proper analysis of the issue of preemption, we readily reject the defendant's recourse to the Dodd-Frank Act because, as several courts have concluded, the Dodd-Frank Act does not have retroactive application and that in an evaluation of the issue of preemption, a court must consider the federal regulations in effect when the parties entered into the transaction. See, e.g., *Molosky* v. *Washington Mutual, Inc.*, 664 F.3d 109 113 n.1 (6th Cir. 2011); *Henning* v. *Wachovia Mortgage, FSB*, 969 F. Supp. 2d 135, 146 (D. Mass. 2013); *Brown* v. *Wells Fargo Bank, N.A.*, 869 F. Supp. 2d 51, 56 n.5 (D.D.C. 2012); *Davis* v. *World Savings Bank, FSB*, 806 F. Supp. 2d 159, 166 n.5 (D.D.C. 2011).

The defendant, relying on the applicability of state licensing laws that did not apply to Long Beach Mortgage Company, has not demonstrated that the loan and mortgage were unenforceable. In light of the foregoing, we reject the defendant's arguments that the loan and mortgage were "illegal and unenforceable" under *Solo-*

*mon* v. *Gilmore*, 248 Conn. 769, 731 A.2d 280 (1999)[8]—which is factually and legally distinguishable from the case at hand—or that the "illegality" of the transaction (under Connecticut licensing laws) negated any defenses available to the plaintiff under the Uniform Commercial Code.

The judgment is affirmed and the case is remanded for the purpose of setting a new sale date.

In this opinion the other judges concurred.

[1] In addition to the named defendant, the plaintiff also named Chase Bank USA N.A.; Christopher M. Coyle; Scott Garrett; Janal, LLC; Baum Capital Investments, Inc.; State of Connecticut Department of Revenue Services and United States of America Internal Revenue Service as defendants. None of these entities, all of whom were defaulted by the trial court for failure to appear and/or plead, are parties to the present appeal. In this opinion, we will refer to Bliss as the defendant.

[2] If the issue of standing was dependent on an assessment of conflicting evidence, it would be appropriate for this court to remand the matter to the trial court to make relevant findings. See, e.g., *LaSalle Bank*, *N.A.* v. *Bialobrzeski*, 123 Conn. App. 781, 790–91, 3 A.3d 176 (2010). We conclude, however, that we may resolve the standing issue in the present case because there is no rational assessment of the relevant evidence that supports the defendant's argument.

[3] Although the plaintiff alleged in its complaint, dated August 24, 2009, that the subject mortgage had been assigned to it, the undisputed evidence in the record is that such assignment did not occur until October 20, 2009.

[4] Among other things, the report states that the "mortgage," "note instrument," and "title policy," were deposited into the collateral file on July 18, 2009, and were released to the plaintiff's counsel on October 13, 2009. It appears, then, that JP Morgan had possession of the mortgage prior to its assignment to the plaintiff. See footnote 3 of this opinion.

[5] We note, as well, that a loan servicer for the owner of legal title to a note has standing in its own right to foreclose on the real property securing the note. See, e.g., *Wells Fargo Bank*, *N.A.* v. *Strong*, supra, 149 Conn. App. 398.

[6] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

[7] The analysis set forth by the Second Circuit Court of Appeals subsequently was upheld by the United States Supreme Court in *Watters* v. *Wachovia Bank*, *N.A.*, 550 U.S. 1, 127 S. Ct. 1559, 167 L. Ed. 2d 389 (2007), in which the United States Supreme Court held that the mortgage lending activities of Wachovia Bank (bank) remained outside the governance of state licensing and auditing agencies when those activities are conducted by the bank's operating subsidiary. Id., 7. The court concluded that the bank's mortgage business, "whether conducted by the bank itself or through the bank's operating subsidiary," was not subject to "the licensing, reporting, and visitorial regimes of the several States in which the subsidiary operates." Id.

[8] In *Solomon*, our Supreme Court held that a secondary mortgage that was issued by a lender in violation of the licensing requirements of General Statutes § 36a-511 was not enforceable in a foreclosure action. *Solomon* v. *Gilmore*, supra, 248 Conn. 771. Unlike the present case, the mortgage transaction in *Solomon* was governed by state law, and did not present a question of federal preemption.