ALARMAX DISTRIBUTORS, INC. *v.* NEW CANAAN
ALARM COMPANY, INC.
(AC 33764)

Beach, Bear and Bishop, Js.

Argued October 25, 2012—officially released March 19, 2013

*Alan R. Spirer,* for the appellant (defendant).

*John B. Farley,* with whom was *Jeffrey F. Gostyla,* for the appellee (plaintiff).

### Opinion

BISHOP, J. The defendant, New Canaan Alarm Company, Inc., appeals from the trial court's judgment in favor of the plaintiff, Alarmax Distributors, Inc., on its breach of contract claim. On appeal, the defendant claims the trial court improperly (1) determined that the plaintiff's claim was not barred by the four year statute of limitations in General Statutes § 42a-2-725 and (2) awarded finance charges. We are unpersuaded by the defendant's statute of limitations claim, but agree as to the award of finance charges. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following undisputed facts and procedural history are pertinent to our consideration of the issues on appeal. The plaintiff is a wholesale distributor of fire and home security equipment, and regularly extends credit to its customers. One such customer is the defendant, a business that installs, services and monitors

security and fire alarm systems. In 1999, when the defendant became a customer of the plaintiff, it submitted an application for credit to the plaintiff. The credit application contained the following payment terms: "In consideration of your supplying products on open account credit terms, it is understood this account is to be paid in full on terms of net [thirty] days FOB shipping point." Upon acceptance of this application, its terms formed the basis of the parties' business relationship relating to credit and payment.

The following findings were set forth in the court's memorandum of decision and find support in the record. "Initially, the defendant's credit limit was established at $5000 but over time, as the parties developed their relationship, it increased to $15,000. The defendant was considered a good customer and with good customers it was the plaintiff's practice to permit the account to exceed the credit limit for longer than [thirty] days as long as a lump sum payment on account was made from time to time. This practice continued until sometime in 2005 when the defendant's bookkeeper was charged with embezzling in excess of $600,000 [from the defendant; she was] later convicted [of the crime]. Not surprisingly, the loss of this money impaired the defendant's ability to meet its financial obligations on a current basis including its account with the plaintiff. The defendant made its final purchase from the plaintiff on May 5, 2005. Thereafter, no further business was transacted between the parties. On November 16, 2005, the plaintiff sent the defendant a demand letter which stated an account balance of $112,309.90. On December 27, 2005, the defendant paid $2500 on account and on February 14, 2006,[1] paid $1500 on account."

---

[1] Elsewhere in the court's memorandum of decision, the $1500 payment is stated as having taken place on February 16, 2006. On our review of the record, the correct date of the defendant's payment appears to have been February 14, 2006. In either case, the difference of two days is not significant.

The record reflects that the defendant made no further payments, and on September 15, 2009, the plaintiff commenced this action in multiple counts against the defendant seeking the balance due. Although the major focus of the plaintiff's complaint was on the defendant's alleged breach of contract, the complaint also included counts for account stated, conversion, unjust enrichment, statutory theft and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In response, the defendant asserted that the plaintiff's action involved a contract for the sale of goods and, therefore, was barred by the four year statute of limitations contained in § 42a-2-725. Specifically, the defendant asserted that its last payment was due thirty days from delivery of the last purchase made on May 5, 2005, and that, because the present action was not commenced until September 15, 2009, more than four years after the last purchase, the action was time barred. Both parties filed motions for summary judgment on the plaintiff's claims of breach of contract, account stated, unjust enrichment and a CUTPA violation. The court, *Adams, J.*, granted the defendant's motion for summary judgment on the CUTPA claim and denied the rest of the parties' summary judgment motions on the ground that there were unresolved questions of material fact. Thereafter, the matter proceeded to trial on the remaining counts.[2]

---

[2] When the court rendered its decision, only three counts remained, namely, the counts for breach of contract, account stated and unjust enrichment. The court determined, and we agree, that the plaintiff apparently did not pursue the conversion or statutory theft counts. In drawing this conclusion, the court relied on the fact that, in its posttrial brief dated June 8, 2011, the plaintiff referred to the breach of contract, account stated and unjust enrichment counts as the "operative counts." Correspondingly, although the court did not refer specifically to the breach of contract and account stated counts in its memorandum of decision, it reasonably may be inferred that the court believed, as well, that these were the only operative counts and its findings pertained only to those counts. In light of the fact that the court found in favor of the plaintiff as to the breach of contract count, it did not need to address the plaintiff's alternative cause of action

At trial, the court, *Hon. A. William Mottolese*, judge trial referee, heard testimony from employees of the defendant and the plaintiff regarding the nature of the parties' business relationship and determined that, by their conduct, the parties had modified their initial agreement from an " 'invoice by invoice' " system into that of an "open account, which in law constituted an account stated." The court found: "Shortly after the parties began to do business, the defendant permitted the plaintiff to 'run up a balance' and make lump sum payments on account, periodically, but not at regular and fixed intervals. The defendant did not have to pay the previous invoice before the plaintiff would ship another order. Nor did the defendant have to bring its account current as a condition precedent to shipment. During the entire time that the parties did business, the defendant never paid on an invoice by invoice basis. When in the plaintiff's judgment the account balance ran too high, its salesman . . . would call the defendant and ask the defendant to make a payment. This practice was typical of their relationship, notwithstanding that each monthly invoice clearly stated that the terms were 'net [thirty] days' and showed the account balance at the time. The plaintiff never enforced the [thirty] day requirement . . . . [P]ayments were made at irregular intervals and always in round numbers, e.g., $2000 on December 11, 2005; $2500 on October 8, 2004; $5000 on February 20, 2004; $10,000 on September 8, 2004. At some point in their relationship, the plaintiff told the defendant that it did not have to worry about the net [thirty] day requirement. In the history of their [fifteen] year association, the defendant never paid within [thirty] days. It is obvious that the defendant benefitted from this practice and followed it consistently."

of unjust enrichment. See *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 416 n.2, 679 A.2d 421 (1996).

The court determined that by modifying their original agreement, the parties converted their arrangement into an "account stated." The court then concluded: "The significance of this classification . . . is that it precludes classification of the billing practice as an 'invoice by invoice' system and therefore allows the court to . . . consider whether the February 14, 2006 payment on account served to toll § 42a-2-725." Answering that question in the affirmative, the court determined that the defendant's last payment on February 14, 2006, constituted an acknowledgment of the debt and was, therefore, the "trigger date" for the running of the statute of limitations. The court concluded that because the action was brought within four years from the trigger date, it was brought timely. Finally, the court determined that the plaintiff was entitled to recover finance charges of 1.5 percent per month as provided for in the parties' credit agreement. The court denied the plaintiff's request to recover prejudgment interest pursuant to General Statutes § 37-3a in addition to the finance charges, on the ground that "it would be inequitable to award both since the finance charges were freely contracted for and fairly compensate the plaintiff for the wrongful detention of [the] money." Thus, the court rendered judgment in favor of the plaintiff in the principal amount of $109,984.55, as well as accrued finance charges of $105,546.88. This appeal followed.

I

We first consider the defendant's statute of limitations claims. The defendant claims that the court improperly found the plaintiff's action timely by (1) concluding that the four year limitation period contained in § 42a-2-725 is subject to tolling, (2) concluding that the parties ignored the payment terms of their agreement and instead created an open account,

thereby extinguishing their initial agreement and substituting a new agreement in its place,[3] and (3) concluding that the defendant's February 14, 2006 payment on the account served as an acknowledgement of the debt and, therefore, tolled the statute of limitations contained in § 42a-2-725. We address each of these arguments in turn.

A

The defendant's challenge to the court's conclusion that the statute of limitations was tolled is based on the defendant's argument that § 42a-2-725, as a statute of repose, is not subject to tolling. We disagree.

As a preliminary matter, we set forth the standard of review. "Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 269 Conn. 802, 809, 850 A.2d 114 (2004). We begin our analysis with the language of the statute. The limitation period of § 42a-2-725, an enactment of the Uniform Commercial Code (UCC) provision § 2-725, provides in relevant part: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. . . . This section does not alter the law on tolling of the statute of limitations . . . ."

At the outset, we do not disagree with the defendant's claim that § 42a-2-725 is a statute of repose as it contains

---

[3] In its brief to this court, the defendant argued that the modified, oral payment agreement, as a substituted contract, must stand on its own, and, therefore, the court should have applied the three year statute of limitations applicable to oral contracts as set forth in General Statutes § 52-581 (a). At oral argument before this court, however, the defendant agreed that the applicable statute of limitations is § 42a-2-725.

a fixed limit of time, in this case four years, after which one in default of a contract may not be sued for its breach. The difficulty with the defendant's position is its claim that, because § 42a-2-725 is a statute of repose, the time limit it embodies is not subject to tolling. In this assertion, the defendant is legally incorrect. As noted, § 42a-2-725 contains a provision explicitly providing that the statute "does not alter the law on tolling of the statute of limitations . . . ."

"Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended." (Internal quotations marks omitted.) *Gelinas* v. *West Hartford*, 225 Conn. 575, 584, 626 A.2d 259 (1993). Simply put, we conclude that the court correctly interpreted § 42a-2-725 as a statute of limitations subject to tolling. Other jurisdictions considering their applicable sections of the parallel UCC provision § 2-725 have come to the same conclusion.[4]

For example, in *Greer Limestone Co.* v. *Nestor*, 175 W. Va. 289, 332 S.E.2d 589 (1985), in an action on a

---

[4] The defendant, in its reply brief, makes the additional argument that the provision in § 42a-2-725 (4) that "[t]his section does not alter the law on tolling of the statute of limitations," is unclear as to whether the "law on tolling" refers solely to statutory law or is intended to include common-law tolling doctrines. The defendant argues further that if varying decisional law doctrines are included in the definition, their inclusion would violate the purpose stated in the official comment to UCC § 2-725: "To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns during business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred." This language, however, must be read in conjunction with the following language also contained in the commentary to UCC § 2-725 that "[s]ubsection (4) makes it clear that this Article does not purport to alter or modify in any respect the law on tolling of the Statute of Limitations as it now prevails in the various jurisdictions." Thus, we conclude that a fair reading of this particular UCC commentary is that the drafters intended for there to be a uniform statute of limitations while acknowledging that jurisdictions may have differing common-law doctrines applicable to the tolling of the statute of limitations.

breach of contract under UCC § 2-725, the court acknowledged that the limitation period could be tolled by a partial payment. The court first determined that the parties had an open account and that unless the defendant's partial payments tolled the statute, the action would be barred under UCC § 2-725. Id., 294. The court concluded that "the rule in most jurisdictions is that partial payment on a debt may start the statute of limitations running anew where the payment is made voluntarily by a debtor under circumstances that warrant a clear inference that the debtor recognizes the whole debt to be subsisting and demonstrates his willingness or obligation to pay the balance of the debt." Id., 295. The court affirmed the trial court's finding that the requisites for the doctrine of partial payment had been met and the plaintiff's action was timely. Id., 296; see also *Giordano* v. *Westchester County Dept. of Parks Recreation & Conservation*, 32 App. Div. 3d 897, 898, 821 N.Y.S.2d 242 (2006) (considering whether UCC § 2-725 was tolled by defendant's partial payment, although concluding plaintiff failed to demonstrate payment constituted acknowledgment of debt); *Beckmire* v. *Ristokrat Clay Products Co.*, 36 Ill. App. 3d 411, 415, 343 N.E.2d 530 (1976) (finding UCC § 2-725 tolled by defendant's absence from state). These cases are supportive of our conclusion that the limitation period embodied in the statute may, in law, be tolled by the conduct of the parties.

B

Having concluded that the four year limitation period embodied in § 42a-2-725 is subject to tolling, we turn next to our assessment of whether the trial court correctly determined that, by their behavior, the parties had tolled the statute.

The defendant claims that the court improperly found that the parties modified their original agreement and

that, under the parties' modified agreement, the defendant's last payment toward the balance of the account was an acknowledgment of the debt, which tolled § 42a-2-725. First, we address whether the parties modified their agreement and, second, we address whether the defendant's partial payments on the debt after June 9, 2005, were made in acknowledgment of the debt so as to toll the statute of limitations.

"Parties may alter any term of an existing contract by entering into a subsequent contract. . . . The contract as modified becomes a new contract between the parties. . . . The meaning to be given subsequent agreements . . . depends on the intention of the parties. As intention is an inference of fact, the conclusion is not reviewable unless it was one which the trier could not reasonably make." (Citation omitted; internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall,* 298 Conn. 145, 189–90, 2 A.3d 873 (2010). The defendant argues that although the plaintiff consented to a more lenient schedule of payments, the parties' conduct could not alter when the plaintiff's action accrued under § 42a-2-725. We disagree.

"For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. . . . *Modification of a contract may be inferred from the attendant circumstances and conduct of the parties. . . .*

"Whether the parties to a contract intended to modify the contract is a question of fact. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or

pass on the credibility of the witness." (Citations omitted; emphasis added; internal quotation marks omitted.) *Herbert S. Newman & Partners* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 761–62, 674 A.2d 1313 (1996); id., 762 (following agreement between architectural firm and general contractor that firm's invoices for services would not exceed set monthly amount, contractor's payment of firm's invoices that regularly exceeded spending cap for almost two years constituted consent to modify contract to increase firm's spending limit).

In the present case, the court concluded that "[t]here is no question that the parties knowingly and intelligently ignored the payment terms of their agreement and instead created an open account which, in law, constituted an account stated."[5] The evidence supports

[5] The court refers to the parties modified arrangement as both an "open, running account" and an "account stated." An "open account" has been defined by this court as "[a]n unpaid or unsettled account; an account with a balance which has not been ascertained, which is kept open in anticipation of future transactions." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 607, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003), quoting Black's Law Dictionary (6th Ed.1990). An account stated occurs when parties to an open account agree, either expressly or impliedly, that a definite amount is due. *Citibank (South Dakota), N.A.* v. *Manger*, 105 Conn. App. 764, 766 n.2, 939 A.2d 629 (2008) ("[t]he delivery by the [creditor] to the [debtor] of each statement of the latter's account, with the [documentation] upon which the charges against [the debtor's account] were based, [is] a rendition of the account so that retention thereof for an unreasonable time constitute[s] an account stated which is prima facie evidence of the correctness of the account" [internal quotation marks omitted]); see also 1A C.J.S., Account Stated § 16 (2005) ("An account stated is generally considered to be a new contract, distinct from any original arrangement, creating a new obligation that takes the place of previous obligations. It is founded on the defendant's admission, express or implied, that a definite amount is due."). Although the court never explicitly stated its reasoning for finding that the parties created an account stated, such a finding is implicit in its conclusion that the parties had an open account and, subsequently, neither party challenged the amount due. Further, the defendant's employee specifically testified that he acknowledged to an employee of the plaintiff that the amount was correct and owing when he requested forbearance on the debt in January, 2006.

the court's finding that the parties modified their original agreement by not adhering to the thirty day payment term in the credit agreement but rather, throughout the course of their fifteen year business relationship, they had an open, running account where the defendant made periodic, lump sum payments toward the balance of the account. "An open account is defined as [a]n unpaid or unsettled account; an account with a balance which has not been ascertained, which is kept open in anticipation of future transactions." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 607, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003); id., 608–609 (affirming trial court's conclusion that parties had established open, running account because plaintiff charged defendant's account and defendant made periodic payments to account during parties' five year business relationship, during which, defendant was never required to pay total amount of account).

In the present case, the court found, with adequate support in the record, that shortly after the parties began their business relationship, the plaintiff permitted the defendant to accrue a balance on its account, notwithstanding that each monthly invoice clearly stated that the terms were "net [thirty] days." Instead of paying each thirty days, however, the defendant made lump sum payments on the account periodically.[6] The defendant was not required to bring the account current before the plaintiff would ship additional orders and "[d]uring the entire time that the parties did business, the defendant never paid on an invoice by invoice basis." "A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the

_____

[6] The court found that "payments were made at irregular intervals and always in round numbers, e.g., $2000 on December 11, 2005; $2500 on October 8, 2004; $5000 on February 20, 2004; $10,000 on September 8, 2004."

second contract. If it contains terms inconsistent with the former contract, so that the two cannot stand together it exhibits characteristics . . . indicating a substitute contract." (Internal quotation marks omitted.) *Bushnell Plaza Development Corp.* v. *Fazzano*, 38 Conn. Sup. 683, 688, 460 A.2d 1311 (1983), quoting *Riverside Coal Co.* v. *American Coal Co.*, 107 Conn. 40, 45, 139 A. 276 (1927). "[A]n essential element of any novation [or substitute contract] is the extinguishing of the original contract by substitution of a new one." *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 145, 709 A.2d 1075 (1998); see also *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 72, 38 A.3d 1212 (2012) (substitute contract is agreement "between the same parties which supersede[s] and discharge[s] prior contract obligations"). On the basis of the evidence, we conclude that the trial court reasonably could have found that the parties entered into a new agreement for an open account.

C

We turn next to address whether the defendant's payment, on February 14, 2006, constituted an acknowledgment of the debt.

The defendant claims that the court improperly found that, as a consequence of the parties' new agreement, the defendant's last payment toward the balance of the account may be considered an acknowledgment of the whole debt from which an unconditional promise to pay can be implied, thereby tolling the statute of limitations.

"The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, *or a payment on account.* . . . Whether

partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the [s]tatute of [l]imitations. . . . [A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion. . . .

"We review the trial court's finding [of an acknowledgment of the debt] . . . under a clearly erroneous standard. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Emphasis added; internal quotation marks omitted.) *Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 369–70, 18 A.3d 604, cert. denied, 301 Conn. 936, 23 A.3d 729 (2011).

In the present case, the court heard evidence that the plaintiff had sent the defendant a demand letter in

November, 2005, indicating that its account was past due and that, if the defendant did not bring the account current, the plaintiff would institute proceedings to collect the balance. In January, 2006, the defendant requested forbearance from the plaintiff, while simultaneously acknowledging both the amount and the past due status of the debt. The court found that this forbearance request was "a fresh promise to pay the old debt." Further evidence showed that after receipt of the letter, the defendant made two lump sum payments, $2500 on December 27, 2005, and $1500 on February 14, 2006. The court found that those payments indicated the intent of the defendant to acknowledge and to pay the account balance. We cannot say that this finding was clearly erroneous; rather, the record supports the court's conclusion that these payments constituted an acknowledgement of the defendant's debt to the plaintiff, thus tolling the running of the statute of limitations. "[The] defense [of the statute of limitations] can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, *or a payment on account*." (Emphasis added; internal quotation marks omitted.) *Zatakia* v. *Ecoair Corp.*, supra, 128 Conn. App. 369.

We conclude, therefore, that the court properly found that the defendant's payment on February 14, 2006, the date of last payment, constituted an acknowledgement of the debt and also operates as the date on which the statute of limitations began to run. Because the plaintiff brought this action within four years from the date of acknowledgement, this action is not time barred. We conclude, as well, that the court properly rendered judgment in favor of the plaintiff on its breach of contract claim in the amount of $109,984.55.

## II

The defendant further claims that the court improperly awarded finance charges because there was no

evidence to support the court's finding that the defendant signed the credit application, which provided for the terms of the finance charges and, further, the plaintiff should be estopped from claiming the finance charges because the parties deviated from the terms of the credit agreement. In response, the plaintiff argues that, if this court determines that the finance charges were awarded in error, we should remand the case to the trial court for a rehearing on the question of prejudgment interest under § 37-3a.[7] Because we conclude that the court correctly determined that the parties had extinguished their original agreement by the formation of a new agreement, we agree with the defendant's claim that the court should not have awarded finance charges to the plaintiff pursuant to the original agreement.[8]

The following additional facts are relevant to our consideration of this issue. The parties' credit agreement included the following provision regarding the imposition of finance charges: "The guarantor(s) hereby agree to pay all purchases within the payment terms of net [thirty] days FOB shipping point and to pay an added service charge of [1.5 percent] per month on all delinquent invoices or portion thereof until paid." The court found that it would be inequitable to award both the finance charges and prejudgment interest because the finance charges were freely contracted for and would fairly compensate the plaintiff for the wrongful detention of its money.

As discussed in part I B of this opinion, the court found that the parties entered into a new agreement,

---

[7] General Statutes § 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."

[8] Having made this determination, we need not consider the defendant's argument regarding the credit application.

which no longer required payment thirty days from the date of the invoice, but instead, the defendant made sporadic periodic payments to reduce the balance of its account and the plaintiff accepted these payments. The provision for payment of finance charges in the parties' original agreement was linked to the thirty day payment requirement. When the parties modified their agreement by their conduct, however, they created a new agreement. As the court correctly noted, "[t]he essential element of a novation is the extinguishment of the original contract by the substitution of a new one." The plaintiff cannot rely on the original agreement as a basis to support the imposition of the finance charges while simultaneously relying on the existence of a new contract to reset the tolling of the statute of limitations.

Having concluded that the plaintiff is not entitled to the finance charges, we next consider the plaintiff's argument that it should be entitled to a rehearing on its claim for prejudgment interest pursuant to § 37-3a. We agree with the plaintiff. It is clear from the record that the court did not award prejudgment interest because it awarded finance charges in accordance with the terms of the parties' original agreement. Thus, we do not read the record as a determination, on the merits, that the plaintiff is not entitled to prejudgment interest but rather as an equitable determination by the court that the plaintiff should not be entitled to recover prejudgment interest in addition to the finance charges. In light of our determination, it now would be appropriate for the court to take up the issue of prejudgment interest. "[An award of prejudgment interest] is . . . an equitable determination . . . which is informed by the demands of justice rather than through the application of an arbitrary rule." (Citations omitted; internal quotation marks omitted.) *Stratford* v. *A. Secondino & Son, Inc.*, 133 Conn. App. 737, 751, 38 A.3d 179, cert. denied,

304 Conn. 918, 41 A.3d 305 (2012). Thus, we reverse the trial court's award of finance charges and remand the case to the trial court for adjudication of prejudgment interest pursuant to § 37-3a.

The judgment is reversed only as to the award of finance charges and the case is remanded for further proceedings in accordance with law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.