******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# PRIME BANK *v.* VITANO, INC.
## (AC 42920)

DiPentima, C. J., and Keller and Flynn, Js.

*Syllabus*

The plaintiff bank sought to recover damages from the defendant guarantor
in connection with the alleged default by the borrower, A, on a certain
promissory note. The defendant had entered into an agreement with
the plaintiff providing that the defendant guaranteed payment of all
liabilities owed to the plaintiff by A. A ceased making required payments
on October 18, 2011, and the plaintiff subsequently obtained a judgment
against A. Thereafter, the members of another entity, P Co., agreed to
fund the monthly interest payment due on A's note, and did so until
October, 2017, but ceased thereafter. The plaintiff then made a demand
on the defendant pursuant to the guarantee agreement, which the defen-
dant failed to satisfy, and the plaintiff commenced this action. Following
a bench trial, the court rendered judgment in favor of the defendant,
from which the plaintiff appealed to this court. *Held:*

1. The trial court properly found that the plaintiff's cause of action to recover
   from the defendant on its guarantee of A's note accrued on October 18,
   2011, and, therefore, was barred by the applicable six year statute of
   limitations (§ 52-576): the court found that, by the terms of the guarantee,
   A's default on October 18, 2011, immediately implicated the guarantee,
   and, found that the plaintiff was aware that it had a cause of action on
   October 18, 2011, as evidenced by its October 18, 2011 letter notifying
   the defendant it was commencing legal action against A and its filing
   of an action against A; moreover, the language of the guarantee expressly
   contravened the plaintiff's argument that its action against the defendant
   did not accrue on A's initial default but, rather, when partial payments
   by P Co. ceased; furthermore, this court has explicitly held that an
   action accrues on the date the note becomes due and payable, not the
   date of the debtor's last installment payment, and this court concluded
   that this holding should be extended to apply to actions on third-party
   guarantee agreements.

2. The plaintiff could not prevail on its claim that the trial court erred in
   failing to conclude that there was an acknowledgment of debt by the
   defendant, thereby tolling the statute of limitations: although the plaintiff
   claimed that there was a recognition of the debt, its brief provided no
   support for what constituted recognition of a debt; moreover, the court
   found that the reason the members of P Co. promised to pay on A's
   debt was the plaintiff's threat that it would call all notes owed by the
   members of P Co., and the plaintiff failed to provide analysis as to
   how a promise made by members of P Co. for their individual benefits
   constituted a new promise by the defendant, and, to the extent that the
   plaintiff presented these arguments as independent bases for establish-
   ing the defendant's acknowledgment of the debt, they were inadequately
   briefed and this court declined to review them; furthermore, the partial
   payments made on the note by P Co. did not constitute an acknowledg-
   ment of the debt by the defendant, as the plaintiff failed to provide any
   law or adequate analysis to contest the court's finding that P Co. and
   the defendant were separate legal entities, and it did not support its
   contention that payments made by a third party can establish an
   acknowledgment of debt by the defendant.

Argued March 4—officially released June 16, 2020

*Procedural History*

Action to recover damages for the alleged default
by a guarantor on a promissory note, brought to the
Superior Court in the judicial district of Ansonia-Mil-
ford, where Patriot National Bankcorp, Inc., was substi-
tuted as the plaintiff; thereafter, the case was tried to
the court, *Hon. John Moran*, judge trial referee; judg-

ment for the defendant, from which the substitute plaintiff appealed to this court. *Affirmed.*

*Stephen R. Bellis*, for the appellant (substitute plaintiff).

*Adam J. Lyke*, with whom were *David C. Pite*, and, on the brief, *Glenn A. Duhl*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Prime Bank,[1] appeals from the judgment of the trial court rendered in favor of the defendant, Vitano, Inc. The plaintiff claims that the court erred in finding that its cause of action to recover from the defendant on a promissory note accrued on October 18, 2011, and was barred by the statute of limitations in General Statutes § 52-576 on October 18, 2017. The plaintiff also claims that the court erred in failing to conclude that there was an acknowledgement of the debt by the defendant, thereby tolling the statute of limitations. We disagree and affirm the judgment of the trial court.

The following facts, as found by the trial court in its memorandum of decision or as undisputed in the record, and procedural history are relevant to our disposition of this appeal. On July 18, 2008, Anthony Villano entered into an agreement with the plaintiff for a revolving line of credit, as expressed in a "Commercial Demand Revolving Loan Note" (note). The note was payable on demand in the amount of $400,000 and called for monthly interest payments beginning on August 6, 2008, and continuing monthly, with a grace period of ten days.

Contemporaneously with the loan agreement between Anthony Villano and the plaintiff, the defendant, Vitano, Inc., entered into a "Guaranty Agreement by Corporation" (guarantee) and security agreement with the plaintiff.[2] The guarantee provided, inter alia, that the defendant unconditionally guaranteed full and prompt payment of all liabilities owed to the plaintiff by Anthony Villano and that "[u]pon any default of the [b]orrower, the liability of the [defendant] shall be effective immediately and payable on demand without any suit or action against the [b]orrower."[3]

Anthony Villano made monthly interest payments as required under the note through and including September, 2011. He did not make the interest payment required on or before October 18, 2011. That same day, the plaintiff delivered to the defendant a letter stating, "[we] anticipate that it will be necessary for the [b]ank to institute action to collect that note," and that "[the plaintiff] is reserving all rights under guaranty; the failure to join [the defendant] in that action is NOT a waiver of [the plaintiff's] rights under the guaranty." On October 19, 2011, the plaintiff brought an action against Anthony Villano to collect on the note. See *Prime Bank* v. *Villano*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-11-6008180-S (June 26, 2015). Judgment was rendered in favor of the plaintiff and against Anthony Villano in the amount of $421,145.27 plus costs. Id.

On December 14, 2011, Jasper "Jay" Jaser, the plaintiff's then president, attended a meeting of the members

of Post Road Plaza, LLC (Post Road),[4] which included Gabriele Villano and Anthony Villano. At this meeting, "its members agreed, at the behest and urging of . . . Jaser . . . to fund the monthly interest payment due on the Anthony Villano note in lieu of [the plaintiff] calling all the notes and debts owed by individual members to [the plaintiff]." Monthly interest payments on the note were made through October, 2017, but ceased thereafter.[5] By letter dated February 13, 2018, the plaintiff made immediate demand on the defendant pursuant to the guarantee agreement for payment of the judgment against Anthony Villano. The defendant failed to satisfy such demand, and the plaintiff instituted the present action against the defendant on April 3, 2018.[6] The defendant filed a motion for summary judgment, which was denied by the court, *Hon. Arthur A. Hiller*, judge trial referee. Subsequently, the defendant filed its answer and special defenses.[7]

On April 24, 2019, following a bench trial, the court, *Hon. John W. Moran*, judge trial referee, rendered judgment in favor of the defendant and found that the plaintiff's claims were barred by the applicable six year statute of limitations, § 52-576. Because it found the plaintiff's action time barred, the court did not reach the defendant's remaining special defenses or the merits of the plaintiff's claims. This appeal followed.

First, we set forth the applicable standard of review pertaining to the bar of statute of limitations. "Whether a particular action is barred by the statute of limitations is a question of law to which we apply a plenary standard of review." (Internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 279, 880 A.2d 985 (2005). "The factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." *Jarvis* v. *Lieder*, 117 Conn. App. 129, 146, 978 A.2d 106 (2009).

I

The plaintiff first claims that the court improperly sustained the defendant's special defense of statute of limitations based on its finding that the plaintiff's right of action against the defendant accrued when Anthony Villano defaulted on the note on October 18, 2011. Even though the plaintiff demanded payment from Anthony Villano on October 18, 2011, because it did not demand payment from the *defendant* corporation until February 13, 2018, the plaintiff argues that the statute of limitations in which it could file an action against the defendant pursuant to the guarantee should not have begun running until it made a demand on the defendant on February 13, 2018. We disagree.

Section 52-576 (a) provides in relevant part that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues

. . . ." The parties do not contest the applicability of the statute or the fact that the plaintiff first made demand on the defendant on February 13, 2018. The only contested issue is when the plaintiff's right of action against the defendant on the guarantee accrued. To make such determination, we first look to the guarantee itself.

"The interpretation of continuing guaranties, as of other contracts, is principally a question of the intention of the contracting parties, a question of fact to be determined by the trier of facts. . . . Even a continuing guarant[ee] that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such a period of time as is reasonable in light of all of the circumstances of the particular case. . . . The finding of the trial court with respect to the intent of the contracting parties regarding the scope of their contractual commitment is, like any other finding of fact, subject only to limited review on appeal. . . . Our role is limited to determining whether the decision of the trier of facts was clearly erroneous in light of the evidence and the pleadings in the whole record. . . . In determining the parties' intentions, the trial court was entitled to rely on, inter alia, the language of the guarant[ee]." (Citation omitted; internal quotation marks omitted.) *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 225, 165 A.3d 174 (2017).

The court found that, by the terms of the guarantee, the default by the borrower, Anthony Villano, which had occurred when he failed to make a payment on or before October 18, 2011, immediately implicated the guarantee. In other words, the court interpreted the agreement between the plaintiff and the defendant as one where, as soon as Anthony Villano, as the original borrower, defaulted on a required payment on the note, the defendant, as the guarantor, immediately assumed liability. In its memorandum of decision, the court specifically cited to the provision of the guarantee stating that the "liability of the [guarantor] shall be effective *immediately* and payable on demand without any suit or action against the [b]orrower." (Emphasis added.) Finding that the plaintiff was aware that it had a cause of action on October 18, 2011, as evidenced by its October 18, 2011 letter notifying the defendant it was commencing legal action against Anthony Villano on the note and its filing of an action against Anthony Villano on the same date, the court concluded that the plaintiff's cause of action against the defendant under the guarantee accrued on October 18, 2011.[8]

"[Our Supreme Court] has stated that, where the guarantee of a note is unconditional or absolute, default of the maker or endorser to pay the note promptly . . . [causes] the guarantor [to] become liable to the holder, and the relation of debtor and creditor was *at once established* between the guarantor and the holder of

the note. (Emphasis added; internal quotation marks omitted.) *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 383, 222 A.3d 950 (2020). Furthermore, our Supreme Court has held that "[i]n the case of a continuing guarant[ee], the statute [of limitations] does not commence to run in favor of a guarantor until there is a default in payment by the principal, and a cause of action has accrued against the former." (Internal quotation marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon*, 210 Conn. 734, 745–46, 557 A.2d 525 (1989).

The plaintiff argues that because Anthony Villano's loan was effectuated through a demand note, as opposed to a term note,[9] its rights against the defendant somehow expanded. The plaintiff argues: "[The plaintiff] could have demanded the note or guarant[ee] at [any time] after it was signed, whether or not there was a default by the borrower. Furthermore, this was not a note with a maturity [date] that required suit within [six] years of the maturity date. The fact that [the plaintiff] demanded the note from [Anthony] Villano did not require them to sue the guarantor. Arguably, [the plaintiff] could have demanded the guarantor pay off the loan [one] week after [the defendant] signed the [g]uarant[ee]. There simply was no contractual requirement to demand the guarantor pay if [the plaintiff] demanded payment from the borrower." The plaintiff fails to explain how this distinction affects the fact that it *could* have initiated legal action, which is the relevant consideration for purposes of determining accrual. We find no merit in this argument.

The plaintiff also attempts to argue that Anthony Villano had not defaulted on the note,[10] instead, characterizing his nonpayment as a general breach of contract.[11] In its brief, the plaintiff contends that as a breach of contract action on a guarantee as opposed to a default by the borrower on the note, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted, which did not occur until October 13, 2017, when partial payments by the third-party separate entity ceased. Accordingly, the plaintiff contends that its action against the defendant did not accrue upon the borrower's initial default but, rather, when the partial interest payments from Post Road ceased.

The guarantee's express language contravenes the plaintiff's argument. It provides expressly that, "[u]pon any default of the [b]orrower, the liability of the [guarantor] shall be effective immediately and payable on demand without any suit or action against the [b]orrower." We conclude that the plaintiff's argument is also contrary to settled case law. "The true test for determining the appropriate date when a statute of limitations begins to run is to establish the time when the plaintiff *first could have successfully maintained an*

*action. . . .* A guarant[ee] is merely a species of contract. . . . In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been *inflicted.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Garofalo* v. *Squillante*, 60 Conn. App. 687, 694, 760 A.2d 1271 (2000), cert. denied, 255 Conn. 929, 767 A.2d 101 (2001). This occurs when the note is due in full, but remains unpaid. Id. In *Florian* v. *Lenge*, supra, 91 Conn. App. 279, this court explicitly held that an action accrues on the date the note becomes due and payable, not the date of the debtor's last installment payment. Although this holding pertained to an action on the note itself, we conclude that, based on the previously discussed case law, this holding should be extended to apply to actions on third-party guarantee agreements. Here, the plaintiff's action against the defendant accrued when Anthony Villano, as the borrower, failed to make the required payment on the note on October 18, 2011, thus implicating the guarantee agreement between the plaintiff and the defendant, and not when the partial payments of interest by a separate entity ceased on October 13, 2017.

In light of the foregoing, we conclude that the court's finding that the plaintiff's action against the defendant accrued upon Anthony Villano's default on the note, which occurred on October 18, 2011, was not clearly erroneous. As such, it properly held that the six year limitation in which the plaintiff could have brought an action against the defendant upon the guarantee expired on October 18, 2017.

II

The plaintiff next claims that, even if the statute of limitations commenced on October 18, 2011, the court erred in concluding there was no acknowledgement of the debt by the defendant such that the limitation period would be tolled. Specifically, the plaintiff argues that there was (1) an unqualified recognition of the debt by Gabriele Villano and Anthony Villano, (2) a new promise that Post Road would make the monthly payments on the note, and (3) a partial payment of the debt in the form of interest payments by Post Road, all of which constituted an acknowledgement by the defendant of the debt. We disagree.

"We review the trial court's finding [of an acknowledgment of the debt] . . . under a clearly erroneous standard. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Alarmax Distribu-*

*tors, Inc.* v. *New Canaan Alarm Co.*, 141 Conn. App. 319, 333, 61 A.3d 1142 (2013).

"The [s]tatute of [l]imitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the [s]tatute of [l]imitations . . . . [A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion." (Internal quotation marks omitted.) *Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 369–70, 18 A.3d 604, cert. denied, 301 Conn. 936, 23 A.3d 729 (2011).

The plaintiff first argues that there was "an unqualified recognition of the debt" by Gabriele Villano and Anthony Villano to Jaser at the Post Road meeting, as revealed through Jaser's testimony. The plaintiff's brief provides no legal support for what constitutes recognition of a debt, or any analysis as to how the testimony that the plaintiff cited in its brief evidences a recognition of debt by the defendant. The plaintiff further argues that "there was a new promise that Post Road . . . would make the monthly payments on [the] loan." Its explanation states merely that "members of [Post Road] at their meeting of December 14, 2011 agreed to the monthly interest payments to [the plaintiff]. . . . [Post Road] continued to make the monthly payments on [the] account." The court found that the reason the members of Post Road authorized the promise to pay on Anthony Villano's debt was the plaintiff's threat that it would "call all notes and/or indebtedness owed by the individual members" and "[t]hese members were financially unable to pay these notes and/or indebtedness if they were called and therefore capitulated in [Jaser's] urging, which they construed as an imminent threat." Although the plaintiff cites a string of cases to support its proposition that "subsequent promises of

repayment extend the statute of limitations and the debt," the plaintiff failed to contest the court's finding or provide analysis as to how a promise made by members of the third-party entity Post Road for their individual benefits, constituted a new promise by the *defendant*, Vitano, Inc., for purposes of acknowledgement of its debt. To the extent that the plaintiff presents these two arguments as independent bases for establishing the defendant's acknowledgement of the debt, they are inadequately briefed, and we decline to review them. *Matthews* v. *SBA, Inc.*, 149 Conn. App. 513, 541, 89 A.3d 938 ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.)), cert. denied, 312 Conn. 917, 94 A.3d 642 (2014).

The plaintiff's final basis for the defendant's acknowledgement of debt is the actual partial interest payments made on the note by Post Road. "Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact." (Internal quotation marks omitted). *Williams Ground Services, Inc.* v. *Jordan*, 174 Conn. App. 247, 252, 166 A.3d 791 (2017). "The mere fact that one knows that another, also obligated to pay the debt, has made payments upon it, without his authorizing, consenting to, or participating in such payments, is not a sufficient basis upon which to base such a recognition." *Broadway Bank & Trust Co.* v. *Longley*, 116 Conn. 557, 563–64, 165 A. 800 (1933).

The court found the following: "[E]ach and every monthly interest payment on the Anthony Villano note was made on a [Post Road] check . . . . These payments were made by a separate and distinct legal entity, namely [Post Road].[12] They were not made by the defendant . . . ." It further found that "all payments made by [Post Road] were for the sole and singular benefit of [Post Road] and/or its members. They were not made for the benefit of the defendant . . . ." On appeal, the plaintiff simply asserts that "[t]he fact that [Post Road] made monthly interest payments on the [Anthony] Villano loan is an unequivocal recognition that [the defendant] was liable on the loan." The plaintiff seems to suggest that the mere fact that there is a business relationship between the two entities, and the fact that Gabriele Villano was involved in both entities, is sufficient to extend the actions of Post Road into an acknowledgement of the debt by the defendant.[13] Again, the plaintiff fails to provide any law or adequate analysis to contest the court's finding that Post Road and the defendant are separate legal entities. Moreover, the plaintiff does not support its contention that payment made by a third party can establish an acknowledge-

ment of debt by the defendant. Additionally, its suggestion that Gabriele Villano's role in one entity can implicate another is contrary to law. It is well established that "[a] limited liability company is a distinct legal entity whose existence is separate from its members." *Wasko* v. *Farley*, 108 Conn. App. 156, 170, 947 A.2d 978, cert. denied, 289 Conn. 922, 958 A.2d 155 (2008). Therefore, Gabriele Villano's dual role as a member of Post Road and an officer of the defendant does not legally tie the two entities together. The corporate veil was never pierced.[14] The defendant was never a member of Post Road, and the defendant did not engage with Post Road in relation to the debt.

In light of the foregoing, we conclude that the trial court properly held that there was no acknowledgement of the debt by the defendant. Thus, we conclude that the plaintiff has not sustained its burden to show that the court erred in finding that the six year statute of limitations was not tolled, and the plaintiff's ability to bring an action against the defendant was barred on October 18, 2017.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Prime Bank merged with Patriot National Bankcorp, Inc., in May, 2018, and Patriot National Bankcorp, Inc., was substituted as the plaintiff by the court on November 28, 2018. For ease of reference, we hereinafter refer to Prime Bank as the plaintiff in this opinion.

[2] The guarantee and security agreement were signed by Gabriele Villano, the defendant corporation's president, duly authorized. Anthony Villano served as the defendant's vice president and secretary.

[3] The guarantee also included the following relevant provision: "This is a continuing guaranty and shall remain in full force and effect and be binding upon the undersigned until your actual receipt of written notice of its revocation, sent by registered or certified mail . . . ."

[4] The plaintiff held a second mortgage on Post Road Plaza, a piece of real estate owned by Post Road and of which the defendant was a tenant.

[5] Gabriele Villano signed the checks on behalf of Post Road until his death in 2017.

[6] On March 19, 2018, the plaintiff attached the bank accounts of the defendant by writ of summons and direction for attachment. On April 6, 2018, the defendant filed a motion to dissolve, wherein it requested a hearing to dissolve the prejudgment remedy. On July 9, 2018, after a hearing, the court, *Hon. Arthur A. Hiller*, judge trial referee, granted the defendant's motion, stating: "[The] plaintiff lacks probable cause that judgment will issue on its behalf and . . . the plaintiff is ordered to immediately release all funds and property attached."

[7] The defendant's special defenses included the statute of limitations set forth in § 52-576, waiver, estoppel, revocation, and laches.

[8] Paul Lutsky, former vice president of the plaintiff and an officer of the substitute plaintiff, as well as Jaser, conceded at trial that the plaintiff was entitled to bring an action against the defendant pursuant to the guarantee immediately upon Anthony Villano's default. See footnote 9 of this opinion.

[9] A demand note is one that is " 'payable on demand' " if it "(i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment." General Statutes § 42a-3-108 (a). In contrast, a term note is one that is " 'payable at a definite time,' " if "it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of (i) prepayment, (ii) acceleration, (iii) extension at the option of the holder, or (iv) extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event." General Statutes § 42a-3-108 (b).

[10] We note that the General Statutes do not provide a definition of the term "default." Black's Law Dictionary, however, defines a "default" as "[t]he omission or failure to perform a legal or contractual duty; [especially], the failure to pay a debt when due." Black's Law Dictionary (11th Ed. 2019) p. 526. Additionally, we note that at trial, Paul Lutsky, an officer of the substitute plaintiff, testified that there was indeed a default by Anthony Villano. The following colloquy took place between Lutsky and the defendant's counsel:

"Q. When demand is made by the bank, as it was in October, 2011, or before then according to your complaint, or the bank's complaint, if not paid, then it becomes due and payable and it's in default, isn't that true?

"A. That's true.

"Q. So, you testified I believe several times in response to questioning by the bank's attorney, that your review of the records never indicated a default by Anthony Villano. That is incorrect, isn't it?

"A. Well, subsequent to this date payments were made on the loan.

"Q. They didn't pay the loan in full, correct?

"A. That's correct. It was not paid in full.

"Q. And only paying the loan in full would cure the default, isn't that true?

"A. That's correct.

"Q. So, the default remained, right?

"A. Yes.

* * *

"Q. So, we have established that a default occurred in 2011, right?

"A. Correct, when the note was demanded.

"Q. And that has not ever been cured?

"A. Correct. . . .

"Q. So, in 2011, Prime Bank had every right to sue Vitano, Inc., isn't that true?

"A. Yes, that's true."

[11] At oral argument before this court, the plaintiff attempted to explain how a default and breach of contract were different. We find no merit in this argument.

[12] Gerald Butcher, an accountant for Gabriele Villano, the defendant, and Post Road, testified to the following regarding the defendant and Post Road:

"A. Well, they are different legal entities. [The defendant] is a corporation, a C corporation. That was incorporated . . . in 1975, I believe June of 1975. And that has, obviously, stockholders and it has directors and officers. Whereas [Post Road] was organized, I believe, in September of 2006. That is organized as a limited liability company, which has members and managers.

"Q. So, they are two, clearly, distinct and separate legal entities, is that right?

"A. Yes.

"Q. And did [the defendant] ever make a payment on Anthony Villano's $400,000 line of credit personal note with [the plaintiff]?

"A. No, they did not."

[13] The extent of the plaintiff's argument is nothing more than a mere recitation of facts, including that Gabriele Villano and Anthony Villano were members of Post Road, Gabriele Villano was the president of the defendant and signed the Post Road checks, the defendant was a tenant of Post Road, and Post Road did not want the plaintiff to demand the guarantee.

[14] In a situation involving multiple business entities, the actions of one can have legal consequences on the other if there was such a unity of interest and ownership that there is effectively no independence between the two. See *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 131–33, 2 A.3d 859 (2010); *Zaist* v. *Olson*, 154 Conn. 563, 576, 227 A.2d 552 (1967).